MASSACHUSETTS BONDING & INS. CO. v. RICHARDSON.

No. 1953.

Court of Civil Appeals of Texas. Beaumont.

April 22, 1930.

Rehearing Denied April 30, 1930.

George K. Holland, Burgess, Burgess, Chrestman & Brundidge, and O. A. Fountain, all of Dallas, for appellant.

Jno. G. Wilson, of Dallas, for appellee.

WALKER, J.

This suit was filed by appellee against appellant to recover on an "accident policy" in the sum of $2,000, issued by appellant to her deceased husband, Bill Richardson. This policy contained the following clause upon which she predicated liability: "This policy insures against (1) the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through External, Violent and Accidental means (excluding suicide, sane or insane)."

The allegations of her petition were sufficient to state a cause of action on the policy and also for statutory damages and attorneys' fees, for which she also prayed. Appellant answered by the usual demurrer and plea of general denial. By its answer appellant admitted the execution and delivery of the policy issued upon the written application of deceased that his occupation was that of "tailor merchant—superintending duties only." It specially pleaded that after the delivery of the policy, without its knowledge or consent, deceased changed his occupation to one more hazardous (that is, that he became a bootlegger) and was engaged in this business at the time of his death, and that his death was the result of an unlawful act, in that at the time of his death he was resisting an officer who was trying to arrest him for bootlegging, and the officer shot and killed him in necessary self-defense. Appellant also specially pleaded certain provisions of its classification manual which, however, were not incorporated in the policy. Upon trial to a jury, the following questions were submitted, answered as indicated:

"Special Issue No. 1.

"Do you find and believe from a preponderance of the evidence that the death of the deceased, W. H. (Bill) Richardson, was caused by accidental means, directly and exclusively of all other means? Answer 'yes' or 'no.' To which Special Issue the jury answered 'yes.'

"Special Issue No. 2.

"Do you find and believe from a preponderance of the evidence that all of the premiums were paid in due time on the policy in question? Answer 'yes' or 'no.' To which Special Issue the jury answered 'yes.'

"Special Issue No. 3.

"Do you find and believe from a preponderance of the evidence that the deceased, W. H. (Bill) Richardson had changed his occupation, prior to his death, from that as stated in the policy in question? Answer 'yes' or 'no.' To which Special Issue the jury answered 'yes.'

"Special Issue No. 4.

"What occupation, if any, do you find and believe from a preponderance of the evidence, the deceased was engaged in at the time of his death? To which the jury answered 'none.'

"Special Issue No. 5.

"From a preponderance of the evidence before you, what do you find and believe is a reasonable sum for attorney's fees for plaintiff's attorney herein? Answer: $535.00."

Judgment was entered on the verdict as returned for the amount sued for with statutory damages and attorneys' fees and a small accumulation on the policy under certain of its provisions.

On a careful review of the entire statement of facts we have concluded that the testimony shows almost to a moral certainty that the deceased had abandoned his occupation of merchant tailor and for some months prior to his death and at the very time of his death was engaged in the business of bootlegging, and that he was killed while resisting arrest for bootlegging, and that at the very time he was killed he was engaged in his unlawful occupation, and that the officer shot and killed him in his necessary self-defense. The over-

whelming weight and preponderance of the testimony was to the effect that the death of Bill Richardson was not the result of "accidental means," as that term was used in the insurance policy, but was the result of his unlawful assault upon the officer who killed him. From these conclusions it follows that the findings of the jury in answer to questions No. 1, 3, and 4 are so against the great weight and preponderance of the evidence as to be clearly wrong. However, we have no jurisdiction to reverse the judgment on this ground because that assignment is not before us. We have mentioned this matter only in support of our ruling upon the admission and rejection of certain testimony. The verdict in this case is so manifestly erroneous that it could have resulted only from an improper understanding by the jury of the proper weight to be given the evidence and upon the consideration by it of testimony wrongly admitted and upon the exclusion of other testimony that would have helped the jury to reach a proper verdict.

██ We think the court committed reversible error in the following particulars:

First. As an affirmative defense appellant pleaded that Bill Richardson's death was the result of his assault on the officer attempting to arrest him and was therefore not accidental within the meaning of the policy. The judge of the trial court thus defined the term "accidental means": "By the term 'accidental means', as used in this charge, is meant such a cause or means from which an injury or death may result, which is not the result of misconduct or the participation of the injured or dead party."

As a submission of its special defense, appellant requested the following issue, which the trial court refused:

"Special Issue No. 9 Requested by Defendant.

"Did Sheriff H. L. Johnston shoot W. H. (Bill) Richardson on the night of January 5th, 1928 in self-defense? Answer 'yes' or 'no.'"

An affirmative answer to this question would have constituted an absolute defense to appellee's cause of action. Question No. 1 did not constitute an affirmative submission of this issue, nor was it submitted by any other question that the court sent to the jury.

Second. Richardson was killed by the sheriff, H. L. Johnston, while Johnston was attempting to arrest him. Johnston was permitted to testify that immediately before he killed Richardson "some one in the car drew a pistol." It was error to exclude his further testimony to the effect "I think it was Richardson."

Third. It was error to exclude the testimony offered by this witness to the effect that he had heard that whisky was stored at the compress where Richardson was killed. This testimony was explanatory of the presence of the sheriff at the compress at the time and place of the killing, and was material on the issue as to who was the aggressor, the sheriff or the deceased. In this connection it should be said that all testimony on the issue of Richardson's occupation as a bootlegger, etc., was material only on the issue of who was the aggressor in the gun fight that resulted in his death. Under the conditions of the policy, the liability was absolute if the result of "accidental means," excluding suicide, sane or insane. There was no clause in the policy denying liability if the deceased was injured or killed while engaged in an unlawful occupation. But on this issue the court did not err in excluding certified copies of certain indictments, bail bonds, etc., wherein Richardson was charged with bootlegging.

Fourth. On the facts of this case it was error to receive the testimony of appellee and Jess Richardson to the effect that they had heard the deceased importune his son-in-law to quit the bootlegging business.

██ Appellant was not entitled to an instructed verdict on any theory of the case, for all his affirmative issues were controverted. The rate manual pleaded by appellant was not made a part of the policy, and therefore its provisions, under article 5050, R. S. 1925, were not available to appellant as a defense. This article is as follows: "Every policy of insurance issued or delivered within this State by any life insurance company doing business within this State, shall contain the entire contract between the parties, and the application therefor may be made a part thereof."

So all special issues carrying the defenses based on the conditions of the manual were properly refused; also all special issues inquiring of the jury whether the deceased was engaged in bootlegging were properly refused. On the conditions of the policy, these issues were merely evidentiary. It was not error to refuse to ask the jury whether the sheriff had been advised or had received information of threats made against his life by the deceased. This was an evidentiary issue. For the same reason it was not error to refuse an issue inquiring whether Richardson had in fact made such threats.

On another trial it is probable that the other errors assigned can be avoided without any instructions from this court.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.