Florence M. SPENCER, Appellant,

v.

SOUTHLAND LIFE INSURANCE
COMPANY, Appellee.

No. 16142.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 4, 1960.

Rehearing Denied Dec. 2, 1960.

Fender, Sayers & Anderson, and John M. Anderson, Fort Worth, for appellant.

R. L. Dillard, Jr., Curtis White, and D. D. Crawford, Dallas, for appellee.

RENFRO, Justice.

Suit was brought by Florence M. Spencer, widow and beneficiary of Luther George Spencer, against Southland Life Insurance Company to recover the proceeds of an accident insurance policy. The trial court, holding that the death of Spencer, the insured, was not the result of accidental bodily injuries, rendered summary judgment in favor of defendant. Plaintiff contends a

fact issue was presented as to whether or not Spencer's death was accidental.

The policy in question provided that the defendant "Hereby insures Luther George Spencer (hereinafter called 'Insured') under classification D* by occupation a Proprietor-Superintendent Dairy subject to all the provisions, exclusions, and conditions of this policy, against loss, to the extent hereinafter provided, resulting from accidental bodily injuries which are the direct and independent cause of the loss and are sustained by the insured during the term of this policy * * *."

The circumstances of the death of Spencer are shown by two affidavits submitted with proof of loss by plaintiff to defendant. Wayne Horton, age 15, nephew of insured, swore he was with his uncle in a pickup truck on August 8, 1959. As they drove through Euless they saw a policeman at the side of the street. The officer waved and insured waved back. They kept going. After proceeding ¾ mile affiant saw the officer following them and so informed insured. Insured said, "It looks like they've got us * * * It might as well be a good one." Insured then cut off the highway onto a gravel road that makes a loop and comes back to the highway about a mile further on. They made the loop "going pretty fast". The police car was following all the time. They returned to the highway and on to the dairy barn which was their original destination. "He parked the pickup and I had already gotten out when the officer drove up and stopped. We were parked heading northeast and the officer pulled in at the back of our pickup with his car pointing toward our right side. I think that Spencer expected to get a ticket for speeding. The officer walked up to us and told us to get in the car with him. That's all I remember him saying. He didn't say anything about giving us a ticket. I was going toward the police car and Spencer was getting out of the pickup. I heard Spencer say, 'I'll show you what I'll do' or something like that. Spencer always carried the shotgun in his pickup. It was

behind the seat and is a .410. I didn't see him get the gun out of the car and didn't know that he had gotten it out. I didn't turn around when he spoke and the next thing I knew I heard some shots." Affiant did not remember hearing the officer say anything after he told them to get in the car. After the shooting he heard insured say, " 'You shouldn't have done that.' " Affiant "knew the gun had no shells in it as Spencer never carried a loaded gun." During all this time the officer "didn't offer to give us a ticket."

Officer Kidwell swore that he clocked insured at a speed of 50 miles per hour on the main street in Euless. He turned on his red light, blew his horn and waved for insured to stop, insured made a waving motion with his hand but did not stop. In following insured he attained speeds up to 120 miles per hour. Upon reaching the dairy barn "I drove in behind him and parked my car about 10 or 15 feet from his truck and my car was facing the right side of his truck. My car was facing a northeasterly direction. I got out of my car, and the driver of the Pick-up, who I later learned was L. G. Spencer, got out of the driver's side of the pick-up. A boy was getting out of the right side of the truck, and I have learned that he is Spencer's nephew, Wayne Horton. I stayed by the door of my car and told them that they would have to have a seat in my car—for racing with a police car. I was going to place them under arrest and bring them back to the Euless Police Station. Spencer did not come toward me but I heard him say, 'I'll show you what I'll do.' Then I saw the stock of a rifle or a shot gun as he was taking it out of the pick-up. I told him to drop the gun back in the truck. He brought the gun up with his left hand on the stock and kept bringing the gun out of the truck. When I saw that he was bringing the gun out of the truck I tried to get over to where Spencer was. I got to a point about three feet behind the tail-gate of his truck and Spencer was bringing the gun around and pointing it in my direction. I told him again to drop the

gun. He didn't drop it, but instead he leveled it at me. At that time was when I pulled my pistol." Affiant intended to shoot the gun out of insured's hand, instead, insured was mortally wounded. Kidwell had never seen insured before and did not learn his name until after the shooting. He did not offer to give insured a ticket while they were in the yard.

◼ Although the affidavits were obtained and submitted by plaintiff, we must, since summary judgment was rendered for defendant, give plaintiff the benefit of every intendment reasonably deducible in her favor and accept the statements therein as true. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. Plaintiff does not contend other evidence could be procured and does not contend the affidavits are inaccurate or that they contain anything other than the facts leading up to and culminating in the unfortunate occurrence.

Plaintiff argues that the effect of officer Kidwell's action was an attempt to falsely imprison insured and that insured had a right to use reasonable force to repel such imprisonment, that insured used reasonable force since he used an unloaded shotgun in attempting to protect himself, that Kidwell was the aggressor and committed an unprovoked attack upon insured.

◼ Death is produced by, or as the result of, accidental means when it is not the natural and probable consequence of the means which produced it, or, stated differently, when death does not ordinarily follow and therefore cannot be reasonably anticipated as the result of the use of such means. Seaboard Life Ins. Co. v. Murphy, 134 Tex. 165, 132 S.W.2d 393.

◼ The test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured. Releford v. Reserve Life Ins. Co., 154 Tex. 228, 276 S.W.2d 517; Hutcherson v. Sovereign Camp, W. O. W., 112 Tex. 551, 251 S.W. 491, 28 A.L.R. 823; Life & Casualty Insurance Co. of Tenn. v. Martinez, Tex.Civ.App., 299 S.W.2d 181.

◼ Kidwell was authorized to arrest insured for speeding without a warrant by virtue of Sec. 153, Art. 6701d, Vernon's Ann.Civ.St.; Brown v. State, 159 Tex.Cr. R. 306, 263 S.W.2d 261. It is true the right of the arresting officer is expressly limited, in that, upon making such arrest, it becomes the duty of the arresting officer to release the prisoner in accordance with the provisions of Art. 792, P.C.; Montgomery v. State, 145 Tex.Cr.R. 606, 170 S.W.2d 750. While Kidwell "intended" to take insured to the police station, this intention was never communicated to insured. All insured knew was that the officer wanted him to take a seat in the police car. He knew he had been speeding; he knew Kidwell was an officer. For all insured knew the officer may have wanted only the information necessary to make out a speeding ticket, or wanted to give insured a warning or lecture or both. Up to this point the officer had made no threats or menacing gesture. Insured, instead of complying with the request to get in the car, said, "I'll show you what I'll do" and drew the shotgun from the truck. It was only after twice warning insured to put down the gun and after insured pointed the gun at Kidwell that Kidwell drew his pistol and shot insured.

◼ Generally, the death of the insured as the result of being killed by an officer acting in self-defense against aggression by the deceased during an attempted arrest does not constitute death "solely through external, violent and accidental means", within the provisions of an accident policy. 24-B Tex.Jur., p. 569, sec. 283; Massachusetts Bonding & Ins. Co. v. Richardson, Tex.Civ.App., 27 S.W.2d 921.

In Texas Prudential Ins. Co. v. Turner, Tex.Civ.App., 127 S.W.2d 563, 566, the court held: "On the undisputed facts, it is our conclusion that Turner, by his conduct on the occasion in question, provoked the difficulty with Garrett under conditions

which would have led a reasonably prudent man to believe that Garrett would shoot him if he continued the assault. Garrett was armed with a deadly weapon. He had the weapon in his hand, and pointing it at Turner, threatened to shoot him if he continued to advance. Notwithstanding the warning given by Garrett, under all the testimony Turner continued to advance, and Garrett shot him. There was no ground for the presumption by Turner, that if a fight occurred between him and Garrett it would be carried on without the use of the deadly weapon. 'The injury followed in a usual or reasonably to be expected way from the means voluntarily employed' as that fact conclusion was construed by the Supreme Court in the Bryant case, supra [Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673, L.R.A. 1916E, 945] and therefore the conclusion follows that the death of Doc Turner was not the result of a bodily injury 'sustained * * * solely through * * * accidental means.' "

In Occidental Life Ins. Co. v. Holcomb, 5 Cir., 10 F.2d 125, 127, the court held: " * * * where the insured is the aggressor, and knew, or should have anticipated, that the other might kill him in the encounter, the death is not to be considered accidental."

The court in Taliaferro v. Travelers' Protective Ass'n, 8 Cir., 80 F. 368, 370, said: " * * * the deceased voluntarily engaged in an encounter with deadly weapons, the result of which was not an unlikely result, but was such as any reasonable person might have foreseen. * * * "; and the Supreme Court of Oregon in Meister v. General Accident, Fire & Assurance Corp., 92 Or. 96, 179 P. 913, 916, 4 A.L.R. 718, held: " * * * if a man deliberately assaults another with a lethal weapon in his hand, such as a pistol, *whether it be loaded or not,* it cannot be said that the injuries he receives in the resulting struggle are accidentally received. The very act of assaulting another with a gun is an invitation to that other to resist unto death, and if the aggressor is killed, it is a natural and logical sequence

of his own voluntary act." (Emphasis ours.) The above case was cited with approval by the Supreme Court of Alabama in O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580.

According to the undisputed record, the officer approached insured in a peaceable manner. Instead of complying with a reasonable request to sit in the police car, or, making inquiry as to the reason for the request, insured said, "I'll show you what I'll do", drew a shotgun from his truck and, in spite of twice being warned to drop the gun, leveled it at the officer, whereupon the officer shot in self-defense. While the shotgun was not loaded, insured knew that the officer did not know it was unloaded. To paraphrase the language in Occidental Life Ins. Co. v. Holcomb, supra [10 F.2d 127], "no one could have thought that such a man (Kidwell) would supinely submit to being shot down, and [Spencer] must have known that there was a strong probability of his suffering bodily injury at the hands of [Kidwell] when he leveled the shotgun at him."

In 26 A.L.R.2d at page 405, it is stated: " * * * most of the courts, in stating the conditions of the accident insurer's nonliability for injury or death to an insured in the course of an assault wrongfully committed upon another, have indicated that in order to excuse the insurer, the insured's injury or death must have been a reasonably foreseeable, as well as a natural, consequence of his wrongful acts", citing several Texas cases.

▮ It is our conclusion under the undisputed evidence and in view of the circumstances in this case that the insured as a man of ordinary intelligence ought to have reasonably anticipated that Kidwell, a police officer, would offer armed resistance to the menace of a shotgun pointed at him, and he must have known that there was a strong probability of his suffering bodily injury at the hands of Kidwell. The act of Kidwell should have been foreseen. Insured's action was an invitation to Kidwell

to shoot. He deliberately took the chance of getting killed. Any reasonable person should have foreseen the result.

We hold under the record the death of the insured did not result from accidental bodily injuries and therefore affirm the judgment of the trial court.

BOYD, J., not participating.