United States Court of Appeals,
Fifth Circuit.
No. 92-3313.

Karl H. ARLETH, et al., Cross-Appellants Plaintiffs-Appellees,

v.

FREEPORT-McMORAN OIL & GAS COMPANY, et al., Cross-Appellees Defendants-Appellants.

Sept. 28, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, REYNALDO G. GARZA and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Freeport-McMoran Oil & Gas Company appeals a final judgment of the district court awarding a class of shareholders damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and securities fraud. We AFFIRM the district court based on the breach of contract claim and do not reach the questions concerning the breach of the implied covenant of good faith and fair dealing or securities fraud. However, we find that the district court erred in not including prejudgment interest in its judgment and that it must correct this error on REMAND.

## I. Facts

In this class action suit, the former shareholders of Stone Exploration Corporation ("Stone") brought suit against Freeport-McMorRan Inc. ("Freeport") and others seeking damages arising out of the merger between Stone and one of Freeport's subsidiaries. In 1983, Stone initiated merger discussions with Freeport because it lacked resources to develop its oil and gas leases. In August of 1983, the two corporations entered into a merger agreement under which Freeport acquired all of Stone's oil and gas reserves and assumed its debts. In return, Stone's shareholders received 3.2 million shares of Freeport stock and a contingent amount of Freeport stock dependant upon the value of Stone's oil and gas reserves in the Lac Blanc field.

The merger agreement obligated Freeport to drill developmental wells in the Lac Blanc field. Specifically, Freeport agreed to drill a test well in five different areas within five years. The exact

location of the wells was designated by Dan R. Frantzen, Stone's President, who is a trained geologist. Freeport also agreed to follow up each successful test well with up to two additional development offset wells. If these wells established gas reserves of 37.5 billion cubic feet or more, then Stone's former shareholders would receive another 1.5 million shares of Freeport stock.

The shareholders contend that in March of 1987, Freeport discovered a huge quantity of gas, which they refer to as the "Mother Lode." This gas was located in the 15,900N sand. According to the shareholders, this gas entitled them to all 1.5 million contingent shares of Freeport stock. Freeport discovered this gas with well No. 19, but could not develop the gas with this well due to mechanical problems. Because Freeport could not develop the gas with well No. 19, the shareholders did not receive credit for these reserves under the agreement. Two years later, Freeport still had not drilled an offset well to develop these reserves and the shareholders became concerned that the five-year deadline was approaching. Moreover, the parties disagreed o n how many offset wells Freeport owed the shareholders.

In January of 1989, the parties met to discuss their differences. At the meeting, the parties came to an agreement which they memorialized in a letter agreement executed on January 30, 1989. Freeport agreed to drill one offset well to the No. 19 well and the No. 20 well, referred to respectively, as the No. 21 and No. 23 well. The parties also extended the drilling time into 1990.

The shareholders assert that Freeport violated the 1989 letter agreement. They argue that the agreement obligated Freeport to sidetrack the No. 21 well if it did not reach the huge gas reserves in the 15,900N sand. The shareholders further assert that they agreed to accept only one offset well to well No. 19 because Freeport falsely stated it could drill only one well in that area. The shareholders argue that Freeport knew it could drill another well and secretly planned to drill another well solely for its benefit. Freeport contends that it was obligated to sidetrack the well only if the well was not commercially successful in a straight hole configuration.

The No. 21 well reached the 15,800N sand in a straight hole configuration and was commercially successful. Freeport then refused to sidetrack the well. Later, Freeport drilled the No. 27 well which reached the gas reserves in the 15,900N sand.

## II. Procedural History

On May 8, 1990, Karl H. Arleth, Don E. Chunn, Dan F. Frantzen, Juanita D. Frantzen, and Joe R. Klutts brought suit on behalf of themselves and all other similarly situated shareholders. The shareholders claimed that Freeport had: 1) violated § 10(b) of the Securities Act of 1934; 2) committed common law fraud; 3) breached the merger agreement as amended by the 1989 letter agreement; and 4) breached the covenant of good faith and fair dealing implied in the merger agreement as amended.

The parties tried the case before a jury between December 9, 1991 and January 3, 1992. Although the jury found that Freeport had not committed common law fraud, it did find in favor of the shareholders on the three other theories of liability. The jury awarded the shareholders over $9 million in damages. On January 29, 1992, the district court entered judgment. Freeport later filed renewed 50(a) and (b) motions, and the shareholders moved to amend the judgment to include prejudgment interest and attorneys' fees. In March of 1992, the district court denied all motions. This appeal followed.

## III. Discussion

Freeport argues that the district court erred in: (1) submitting an unambiguous contract to the jury for interpretation; (2) upholding an irreconcilable jury verdict; (3) refusing to submit Freeport's waiver and estoppel defenses to the jury; (4) in its evidentiary rulings; (5) upholding the jury's damage award; and (6) denying Freeport's motions for judgment as a matter of law and for new trial. Freeport further argues that there is insufficient evidence to support the securities fraud claims under section 10(b) of the Securities Act of 1934 and that those claims are barred by the applicable statute of limitations.

The shareholders argue that the district court erred in denying them prejudgment interest on their damage award and in not submitting their claim for punitive damages to the jury.

As to Freeport's claims, we find that Freeport is correct in asserting that the contract is unambiguous, however, we find that the district court did not submit the contract to the jury for interpretation. Furthermore, we uphold the district court on the breach of contract claim and do not

reach Freeport's arguments concerning securities fraud and breach of the implied covenant of good faith and fair dealing. We also find that the district court did not err in: (1) refusing to submit Freeport's waiver and estoppel defenses to the jury; (2) its evidentiary rulings; (3) upholding the jury's verdict; and (4) in refusing Freeport's motions for judgment as a matter of law and for new trial.

With regard to the shareholders' claims, we find the district court erred in not including prejudgment interest in its judgment and that it must correct this error on remand. Since we uphold the jury's damage award, the shareholders agree to drop their claim for punitive damages.

A. *Is the 1989 letter agreement ambiguous?*

Freeport argues that the district court erred in submitting the letter agreement to the jury for interpretation because it had already found the contract unambiguous.

The 1983 merger agreement states that Delaware law applies to the agreement. The 1989 letter agreement provides that all terms, not amended, continue in full force and effect. Since the 1989 letter agreement does not amend the choice of law clause, Delaware law applies. Under Delaware law, "[t]he proper construction of any contract, ... is purely a question of law." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Supr.Del.1992). We review questions of law *de novo. Jhaver v. Zapata Off-Shore Co.,* 903 F.2d 381, 383 (5th Cir.1990).

Paragraph 2(e), the crucial provision of the letter agreement, provides:

> In the event the Exxon Fee No. 21 Well, referred to above, is not completed as a commercial producer of oil and/or gas after reaching the well's objective depth in a straight hole configuration, then, in such event and only in such event, FMPO [Freeport] shall attempt to sidetrack the well and drill to and complete in that certain sand of formation which was encountered in the Exxon Fee No. 19 Well in the interval 16,490N to 16,709N as evidenced on the Dual Induction Log of such well; provided, however, the FMPO [Freeport] shall not be obligated to conduct such sidetracking operations unless the same would be conducted by an operator of ordinary prudence exercising sound judgment in the same or similar circumstances, ...

Freeport asserts that under paragraph 2(e)'s unambiguous language, it is not obligated to sidetrack the No. 21 well if the well is a "commercial producer" in its straight hole configuration. Freeport asserts that it did not have an obligation to sidetrack the No. 21 well to the 15,900N sand

because the well was completed as a commercial producer in the 15,800N sand. Freeport further asserts that the shareholders knew that the 15,800N sand was one of the two primary objectives of the No. 21 well and that Freeport wanted to drill and complete the well in its straight hole configuration. Finally, Freeport asserts that the district court did not properly instruct the jury on this issue.

The shareholders focus on the well's "objective depth." They contend that the agreement required the well to be a commercial producer at its objective depth. They contend that the No. 21 well's objective depth was the 15,900N sand, which was the deepest objective of the well. They contend that paragraph 2(e) speaks to two alternative configurations of the well, the straight hole configuration and the sidetrack configuration. They further contend that Freeport was obligated to drill and complete the No. 21 well in the 15,900N sand, regardless of the configuration of the well.

Freeport asserts that the objective depth of the No. 21 well was nothing more than the measured depth which, if achieved, would allow the well to encounter the objective 14,600N, 15,800N and 15,900N sands. Freeport also asserts that the shareholders are asking this court to rewrite the agreement.

The shareholders also contend that Freeport's interpretation of paragraph 2(e) ignores all the evidence of the circumstances and context surrounding the 1989 letter agreement. The shareholders contend that under Delaware law, the parol evidence rule requires the consideration of extrinsic evidence in determining whether the contract is ambiguous.

Freeport agrees that a court can consider parol evidence when deciding whether a contract is ambiguous. Unlike the shareholders, however, Freeport argues that the circumstances surrounding the contract suggest that it is unambiguous.

The district court did not consistently rule on the issue of ambiguity. In an order denying one of Freeport's pre-trial motions, the district court declared that "[t]he 1989 letter agreement is not unambiguous." However, at trial, the district court stated that the 1989 letter agreement is not ambiguous. The district court did make it clear, however, that the jury was going to decide whether Freeport breached the 1989 letter agreement.

Reviewing the 1989 letter agreement *de novo,* we find it unambiguous. We find that the letter

agreement speaks to two alternative configurations of the well, the straight hole configuration and the sidetrack configuration. We also find that Freeport was obligated to drill and complete the No. 21 well in the 15,900N sand, regardless of the configuration of the well. Finally, the jury's verdict that Freeport breached the contract is supported by sufficient evidence, because it is undisputed that Freeport did not complete the well in the 15,900N sand.

We review the district court's jury instructions as a whole to ensure that they accurately reflect the law. *Crist v. Dickson Welding, Inc.,* 957 F.2d 1281, 1287 (5th Cir.), *cert. denied sub nom. Dickson Welding, Inc. v. Alexander & Alexander,* --- U.S. ----, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992). The district court has broad discretion with regard to its instructions. "A judgment will be reversed only when the charge as a whole leaves us with the substantial and eradicable doubt whether the jury has been properly guided in its deliberations." *Hall v. State Farm Fire & Casualty Co.,* 937 F.2d 210, 214 (5th Cir.1991) (internal citations omitted).

Although the trial court's jury instructions are not a model of clarity, they accurately instruct the jury that they are to read the contract and decide whether Freeport breached its provisions.

B. *Is the jury's verdict irreconcilable?*

Freeport argues that the jury responses cannot be reconciled. The jury found that Freeport did "commit fraud as provided for by securities law," but did not "commit fraud in bringing about the agreement between the parties." It is possible for us to uphold this case based solely on breach of contract without having to delve into the other theories of liability. Therefore, it is unnecessary for us to decide the question of whether the jury responses can be reconciled. It is also unnecessary for us to decide Freeport's claims that there is insufficient evidence to support the section 10(b) securities fraud claims or that those claims are barred by the statute of limitations. Finally, it is unnecessary for us to decide whether the jury's finding that Freeport breached the implied covenant of good faith and fair dealing is supportable under Delaware law.

C. *Did the district court err in refusing to submit Freeport's waiver and estoppel defenses to the jury?*

Freeport contends that the shareholders waived, or are estopped from asserting, their claims against Freeport based on the 1983 merger agreement because they entered into the 1989 letter

agreement. Freeport's argument is irrelevant. Even if the shareholders waived, or are estopped from asserting, their claims against Freeport based on the 1983 merger agreement, they can still assert their claims against Freeport based on Freeport's breach of the 1989 letter agreement. Therefore, the district court did not err in refusing to submit the waiver and estoppel defenses to the jury.

D. *Did the district court abuse its discretion in any of its evidentiary rulings?*

Freeport contends that it was prejudiced by the district court's evidentiary rulings. We review the district court's evidentiary rulings for an abuse of discretion. *Johnson v. Ford Motor Co.,* 988 F.2d 573, 577 (5th Cir.1993). Freeport contends that the district court allowed the shareholders to present parol evidence concerning the 1989 letter agreement while denying it the same opportunity. Freeport also contends that the district court erroneously allowed the shareholders to present evidence concerning Stone's oil and gas reserves outside of the designated areas. Freeport contends that this evidence was irrelevant because the shareholders' contingent stock depended solely on the amount of oil and gas reserves in the designated areas. Freeport further contends that the district court erroneously denied its expert the opportunity to point out this flaw in the shareholders' analysis of net additional reserves. Finally, Freeport argues that the district court erroneously excluded evidence about Mr. Stone's and Mr. Frantzen's finances.[1]

Since we find the contract unambiguous, it is unnecessary to decide whether the district court abused its discretion in denying Freeport's parol evidence concerning the 1989 letter agreement. Freeport is correct in stating that the shareholders' contingent stock depended solely on the oil and gas reserves in the designated areas. However, the shareholders presented the evidence regarding reserves outside the designated areas for the sole purpose of proving the amount of reserves found in the 15,900N sand located within the designated area. Therefore, the district court did not abuse its discretion in allowing the shareholders to present evidence concerning oil and gas reserves outside of the designated areas or in denying Freeport's expert's testimony.

In excluding evidence concerning Mr. Frantzen's personal financial condition, the district court found that the prejudicial effect of the evidence substantially outweighed its probative value.

---

[1] Mr. Frantzen and Mr. Stone are the founders of the Stone Oil Corporation.

*See* Fed.R.Evid. 403. The district court did not abuse its discretion in making such a ruling. With regard to Mr. Stone's financial relationship with Mr. Frantzen, the district court found that the evidence concerning the closeness of their relationship had not been equivocated and that Freeport's evidence was unnecessary. Again, the district court did not abuse its discretion in making such a ruling.

E. *Can we affirm the jury's award of damages as long as we affirm at least one of the jury's three liability findings?*

At trial, the shareholders presented four causes of action, and the jury found in their favor on three of those causes of action. The district court, however, only submitted one question on damages to the jury. Freeport contends that if we reverse one of the jury's liability findings, then we must reverse the entire damages award. In contrast, the shareholders contend that if we affirm at least one of the liability findings, then we must affirm the award of damages.

Freeport correctly notes that, where the jury returns a general finding of liability which makes it impossible to tell which theory of liability the jury adopted, we must reverse if one of the theories is unsustainable. *Jones v. Miles,* 656 F.2d 103, 106 (5th Cir. Aug. 1981).

The shareholders argue, however, that the jury did not return a general finding of liability. Instead, the jury specifically found Freeport liable on three different causes of action. The shareholders contend that all three causes of action arose from the same actions and resulted in the same damages. The shareholders have consistently argued that their only damages were the contingent shares of Freeport stock that Freeport wrongfully denied them.

Freeport accepted a single damages question below. Moreover, Freeport does not explain how the damages from the separate causes of action are different. Instead, Freeport argues that the shareholders' evidence before the jury suggested more than one method of calculating the value of the lost stock.

We find that the same damages flow from all three of the shareholders' causes of action. Therefore, we uphold the jury's damage award because it represents the value of the contingent shares of Freeport stock the shareholders would have received had Freeport not breached the 1989 letter agreement.

F. *Did the district court err in denying the shareholders prejudgment interest?*

Relying on *Wojtkowski v. Cade,* 725 F.2d 127, 129 (1st Cir.1984), the district court denied the shareholders prejudgment interest. The shareholders correctly note, however, that prejudgment interest is a matter of substantive law. *Hamman v. Southwestern Gas Pipeline, Inc.,* 821 F.2d 299, 307 (5th Cir.1987). Delaware law governs the shareholders' claim to prejudgment interest on their pendent state claims. *See Doty v. Sewall,* 908 F.2d 1053, 1063 (1st Cir.1990). Under Delaware law, successful plaintiffs are entitled to prejudgment interest. *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 826 (Del.Supr.1992).

In response, Freeport argues that when it is unclear whether a damage award is based on federal or state claims, the district court has discretion to deny the plaintiffs prejudgment interest. *Wojtkowski,* 725 F.2d at 129. Importantly, Freeport admits its argument fails if the same damages flow from all three of the shareholders' causes of action.

We find that the shareholders' damages are the same under all three causes of action and we affirm the shareholders' breach of contract claim under Delaware law. Therefore, the district court erred in not including prejudgment interest in its judgment and must correct this error on remand.

G. *Did the district court err in denying Freeport's motions for judgment as a matter of law and for new trial?*

Freeport contends that the district court erred in denying its motion for judgment as a matter of law and its motion for new trial. *See* Fed.R.Civ.P. 50(a) and (b). A moti on for judgment as a matter of law is proper only if, "the fact s and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict ..." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). We review a district court's ruling on a motion for a new trial under an abuse of discretion standard. *Bailey v. Daniel,* 967 F.2d 178, 179 (5th Cir.1992).

The facts point against Freeport; therefore, the district court properly denied Freeport's motion for judgment as a matter of law. Furthermore, the district court did not abuse its discretion in denying Freeport's motion for new trial.

H. *Did the district court err in not submitting the shareholders' claim for punitive damages to the*

*jury?*

The shareholders contend that the district court erred in not submitting their claim for punitive damages to the jury.  The shareholders, however, agree to abandon this argument if we affirm the jury's damage award.

Since we uphold the jury's damage award, it is unnecessary to reach this issue.

## IV. Conclusion

Therefore, we AFFIRM the district court in all respects except we REMAND this case to the district court to calculate the amount of prejudgment interest to be included in the judgment.