**Fannie LOCKETT, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. A. No. SA–92–CA–00525.**

United States District Court,
W.D. Texas,
San Antonio Division.

July 12, 1994.

---

Daniel Kruger, San Antonio, TX, for plaintiff.

George H. Spencer, Jr., Clemens, Spencer, Welmaker & Finck, Inc., San Antonio, TX, for defendant.

## OPINION AND ORDER

BIERY, District Judge.

This case presents an opportunity to review recent developments in Texas law concerning the relationship between contractual insurance causes of action and noncontractual insurance causes of action, such as the common law duty of good faith and fair dealing (often referred to as bad faith cases), and statutory causes of action under the Deceptive Trade Practices Act and the Insurance Code. After the jury verdict, the parties filed the following motions: 1) motion by Prudential Insurance Company for judgment as a matter of law or for new trial; 2) motion by Fannie Lockett for attorney's fees and costs; and 3) motion by Fannie Lockett for judgment on the verdict and motion to reinstate noncontractual claims. After careful review and consideration of all pleadings, motions, and responses, the Court denies Prudential's motion for judgment as a matter of law or for new trial and denies Ms. Lockett's motion to reinstate noncontractual claims. The Court grants Ms. Lockett's motions for attorney's fees and costs and for judgment on the verdict.

### I. BACKGROUND OF THE CASE

Plaintiff, Fannie Lockett, owned an insurance policy insuring the life of her son, Ronald Coble. On April 3, 1989, Mr. Coble died from gunshot wounds suffered after an altercation with a Texas Department of Public Safety Officer.

Ms. Lockett submitted her claim for dependent personal accidental death benefits to the defendant, Prudential Insurance Company. Prudential denied Ms. Lockett's claim because it believed the death of her son was not the result of an accidental injury. In the letter denying her claim, Prudential explained to Ms. Lockett it believed her son was the aggressor in the altercation with the law enforcement officer, the act of aggression

led to her son's death, and Mr. Coble "should reasonably have foreseen by the nature of his actions that his death might result." *See Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 552 (Tex.1976) (test of whether killing accidental determined from viewpoint of insured). Prudential's conclusion was based on information provided by the Texas Rangers of Johnson County.

After Prudential's denial of her claim, Ms. Lockett filed suit claiming breach of contract, negligence, gross negligence, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, violations of the Texas Unfair Claims Settlement Practices Act, violations of the Texas Deceptive Trade Practices Act, and violations of article 21.55 of the Texas Insurance Code. Prior to trial, Judge Edward C. Prado granted Prudential's Motion for Partial Summary Judgment, ruling plaintiff's claims for negligence, gross negligence, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, and violations of the Deceptive Trade Practices Act and articles 21.21, 21.21–2 and 21.55 of the Texas Insurance Code were dismissed with prejudice. At trial, the jury found the death of Ronald Coble was accidental based on the deposition testimony of Gwendolyn Johnson and Officer Mark Reinhardt. In light of the jury finding, Ms. Lockett is requesting her causes of action for violations of the Texas Insurance Code and the Deceptive Trade Practices Act be reinstated.

### II. FACTS

Ronald Coble and his girlfriend, Gwendolyn Johnson, were driving on Interstate 35 near Fort Worth on the morning of April 3, 1989, when they experienced car trouble. After they pulled off the road, Mr. Coble exited the car and looked under the hood. A Department of Public Safety officer noticed their vehicle and pulled up behind it to see if anyone needed assistance. Upon seeing Mr. Coble, the officer asked him if the vehicle had broken down. Mr. Coble replied he thought the car had just overheated. Ms. Johnson, who had remained in the car, said, "That's not all it is, either." At this time, the

officer noticed Ms. Johnson had blood around her mouth and her lip was split open;[1] the officer decided to question Mr. Coble further. The officer asked Mr. Coble to come with him to the rear of the vehicle, and reluctantly, Mr. Coble complied. Ms. Johnson remained inside the car but was unable to see what happened next.

The officer testified that once they were behind the vehicle, Mr. Coble lunged for the officer's gun and pulled it out of its holster. The officer then grabbed Mr. Coble's arm and attempted to dislodge the weapon. Mr. Coble finally dropped the gun after the officer bit him on the arm twice. As the officer picked up his gun, Mr. Coble ran back to his car and dove in through the driver's side door. The officer fired his gun twice, hitting Mr. Coble in the chest and in the face. Mr. Coble died soon thereafter.

### III. PRUDENTIAL'S MOTION FOR JUDGMENT AS MATTER OF LAW

■ Prudential contends Mr. Coble's death was not accidental, as a matter of law, because it occurred while Mr. Coble was attempting to escape from, avoid or resist a lawful arrest. Prudential also maintains the insured could not reasonably assume the officer would risk further injury by waiting to investigate and analyze for what Mr. Coble might be reaching as he dove into the back of the vehicle. In the alternative, Prudential argues the evidence supporting the jury's verdict is so "insubstantial and, at best, conjectural as to necessitate a new trial."

"A motion for judgment as a matter of law is proper only if, 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [jurors] could not arrive at a contrary verdict.'" *Arleth v. Freeport–McMoran Oil & Gas Co.*, 2 F.3d 630, 636 (5th Cir.1993). Prudential asks the Court to consider, for a second time, two cases discussed in its prior motion to reconsider its motion for summary judgment. Prudential contends these cases stand for the proposition that a

person who engages in a crime must, as a matter of law, reasonably anticipate being shot if he attempts to flee, and the death of an insured who commits an act which can be reasonably interpreted as posing a threat to a peace officer is not accidental. *Ritchie v. John Hancock Mut. Life Ins. Co.*, 521 S.W.2d 367 (Tex.Civ.App.—Waco 1975, no writ); *Spencer v. Southland Life Ins. Co.*, 340 S.W.2d 335 (Tex.Civ.App.—Fort Worth 1960, writ ref'd).

In *Ritchie v. John Hancock Mut. Life Ins. Co.*, Ritchie, the son of the plaintiffs, and another burglarized a truck at night. Ritchie was standing beside the truck and his friend was inside when they were told, "Get out in the open, I have a gun." *Ritchie*, 521 S.W.2d at 368. Plaintiff and his friend began running away when several shots were fired, and plaintiff was struck by a bullet. The court found the plaintiff had voluntarily engaged in the commission of a crime at night and was caught committing the crime. The plaintiff was expressly warned, and under the undisputed factual situation, the court held any reasonable person who in the face of an express warning turns and runs should reasonably anticipate being shot. *Id.* Therefore, his injuries were not accidental.

In *Spencer v. Southland Life Ins. Co.*, 340 S.W.2d 335, 336 (Tex.Civ.App.—Fort Worth 1960, writ ref'd), Mr. Spencer led a police officer in a high speed chase before stopping his truck at his planned destination. As the parties exited their vehicles, the officer told the persons in the truck to get into the car with him. Spencer, the driver of the truck, told the officer, "I'll show you what I'll do," and the officer saw Spencer taking something out of the truck which appeared to be a rifle or shot gun. *Id.* The officer twice told him to drop the gun, but Spencer pointed the unloaded gun at him. The officer did not know until later that the gun was unloaded. The officer stated he intended to shoot the gun out of Spencer's hand but instead mortally wounded him. *Id.* Under those circumstances, the court found "the insured as a man of ordinary intelligence ought to have

---

**1.** Ms. Johnson later explained that she and Mr. Coble had quarrelled earlier in the day and Mr. Coble had struck her and caused her lip to bleed.

reasonably anticipated that Kidwell, a police officer, would offer armed resistance to the menace of a shotgun pointed at him, and he must have known there was a strong probability of his suffering bodily injury at the hands of Kidwell." *Id.* at 338. The court found Spencer's actions were an invitation to the officer to shoot.

In the instant case, the incident occurred during the day, and Mr. Coble did not point a weapon at the officer nor did the officer expressly warn Mr. Coble he would shoot before the shots were fired. In denying Prudential's motion for summary judgment, this Court previously concluded a genuine issue of material fact existed as to whether Mr. Coble reasonably anticipated injury to himself. The officer testified he shot Mr. Coble because he thought Mr. Coble was diving into the car to retrieve a weapon. Although that probably was what the officer reasonably believed, the legal standard to determine whether the killing was accidental is based on the viewpoint of the insured and not from the viewpoint of the one who does the killing. *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 552 (Tex.1976). Thus, at the time of trial, a fact question still existed as to Mr. Coble's reasonable anticipation.

The law assumes a person's natural instinct is to avoid injury and preserve his own life. *Heyward*, 536 S.W.2d at 559. Therefore, it was possible for the jury to believe that Mr. Coble dove into the automobile with the intention of avoiding injury. At trial, Ms. Johnson's deposition was read to the jury. She testified Mr. Coble's arms were not outstretched when he dove into the car, and he was found with his arms at his side. There was no evidence of a weapon found in the car, no evidence the officer was trying to arrest Mr. Coble, and no evidence the officer warned Mr. Coble to stop before he fired the shots.

The only other witness who testified about the incident was Officer Mark Reinhardt. His videotaped deposition was played for the jury. Officer Reinhardt stated, contrary to Ms. Johnson's testimony, Mr. Coble's arms were stretched out in front of him as he dove into the car. The officer also stated that at the time he walked up to the stopped vehicle and asked Mr. Coble to come to the rear of the vehicle, he could not have reasonably foreseen the situation would result in him using deadly force. The jury also heard the officer testify that while waiting for backup or assistance, he "observed an old man coming across the bar ditch with a—a board in his hand, and he was yelling, 'Officer, I saw everything.'" The "man with the board" was not brought before the jury to testify as to what he saw. The jury seemed concerned with this omission because they wrote a note to the Court inquiring as to what happened to the man with the board. Although had the Court been the factfinder a different result would have occurred, an inference from the verdict can be made, however, the jury may not have believed the officer's testimony. It is the jury's function to weigh the conflicting evidence and credibility of the respective witnesses. *MBank Houston, Nat'l Ass'n v. Armco, Inc.*, 1 F.3d 1439, 1446 (5th Cir.1993). Thus the trier of fact could determine, based on the evidence presented, that from Ronald Coble's viewpoint, his conduct was not such as to cause him reasonably to believe the trooper would probably kill him. Moreover, the facts and inferences did not point so strongly and overwhelmingly in favor of the defendant that the Court believes reasonable jurors could not arrive at a contrary verdict. *Arleth v. Freeport–McMoran Oil & Gas Co.*, 2 F.3d 630, 636 (5th Cir.1993). Nor was the jury verdict against the great weight of the evidence as to entitle Prudential to a new trial. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir.1990). Therefore, the motion for judgment as a matter of law or for new trial is DENIED.

## IV. PLAINTIFF'S MOTION TO RE-INSTATE NONCONTRACTUAL CLAIMS

In light of the jury's finding that Mr. Coble's death was accidental, Plaintiff requests the Court to reconsider its order dismissing Plaintiff's claims for violations of the Texas Deceptive Trade Practices Act and articles 21.21 and 21.21–2 of the Texas Insurance Code. Plaintiff contends this Court erred in granting Prudential's motion for

**740**

partial summary judgment because the stated reason for doing so was Prudential's compliance with its duty of good faith and fair dealing was sufficient to relieve it from liability under the statutory consumer protection causes of action. Plaintiff maintains whether Prudential has breached its duty of good faith and fair dealing is a completely different question from whether Prudential has violated the Texas Insurance Code.

■ A claimant alleging a breach of the duty of good faith and fair dealing must establish: (1) the absence of a reasonable basis for denying or delaying payment of the policy benefits, and (2) the insurer knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376 (Tex.1994).[2] The absence of a reasonable basis element requires "an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Id.* The absence of a reasonable basis must be judged by the facts the insurer had at the time it denied the claim. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). The second element, whether the insurer knew or should have known, "is an attempt to balance the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims." *Dominguez*, 873 S.W.2d at 376.

■ Mere non-payment of a claim and the exercise by the insurer of its constitutional right to litigate before a jury the merits or demerits of the underlying contract claim is not in and of itself bad faith. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex.1988). The line of demarcation is, as in tort law generally, reasonableness.[3]

The insurer's liability for bad faith is distinguished from the insurer's liability under the contract of insurance. *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 599 (Tex. 1993). If the insurer denies what is later determined to be a valid claim under the insurance contract, the insurer must pay actual damages up to the policy limits. "But as long as the insurer has a reasonable basis to deny or delay payment of the claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.; see State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 288 (Tex.App.—San Antonio 1992, writ denied) (State Farm had reasonable basis for denying claim even though jury later decided State Farm should have paid claim). The vital fact to be proved by the plaintiff is the *complete absence* of a reasonable basis for the denial of a claim, delay in payment, or a failure to investigate. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987).

■ The level of conduct needed to prove bad faith is not found when the evidence indicates a bona fide dispute about the insurer's liability existed. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (1994). Nor can bad faith be established if the insurer was incorrect about the proper construction of the policy or the factual basis for its denial of the claim. *Id.; Lyons*, 866 S.W.2d at 601. An insurer who presents *undisputed* evidence of a reasonable basis for denying the claim establishes conclusively the *opposite* of the vital fact. Therefore, there is no vacuum-like "absence of a reasonable basis." If the undisputed facts demonstrate the insurer possessed evidence reasonably showing the insured's contract claim might not be valid, the bad faith action is not viable as a matter

**2.** Plaintiff contends there are four elements necessary to prove the breach of the duty of good faith and fair dealing. She contends she has proved the first two elements: (1) a contract between the insurer and the insured; and (2) the insurer denied the claim or delayed in payment. The Court agrees she has proved these "elements" although the Court finds no other opinion, other than the concurring opinion in *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 168 (Tex.1987), listing these as elements of the cause of action. *See St. Paul Guardian Ins.*

Co. v. Luker, 801 S.W.2d 614, 618 (Tex.App.—Texarkana 1990, no writ) (insurer owes duty of good faith and fair dealing to third party beneficiary when insurer agrees to insure under terms of insurance contract).

**3.** "So far as there is one central idea, ... [tort] liability must be based upon conduct which is socially unreasonable." W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 1, at 6 (5th ed. 1984).

of law because the opposite of the vital fact has been conclusively proven.[4] *See State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 284–285 (Tex.App.—San Antonio 1992, writ denied) (undisputed evidence before insurance company made out circumstantial case of arson); *St. Paul Guardian Ins. Co. v. Luker*, 801 S.W.2d 614, 626–27 (Tex.App.—Texarkana 1990, no writ) (all experts concluded fire caused by arson); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426–27, (Texarkana 1989), *aff'd on other grounds*, 811 S.W.2d 552 (Tex.1991) (reasonable fact question presented as to who was piloting aircraft at time of loss).

■ In the instant case, Ms. Lockett failed to prove the complete absence of a reasonable basis for the denial of her claim. The summary judgment evidence indicated Mr. Coble attacked the officer after being questioned about his girlfriend's bloody mouth. Mr. Coble and the officer struggled, and Mr. Coble tried to take the officer's weapon from him. Mr. Coble then jumped into the back seat of the car. Although a fact issue existed as to the ultimate issue (whether Mr. Coble's death was accidental), reasonable justification was given for denying the claim under the facts of this case and existing law. *See Sanders v. Prudential Ins. Co.*, 697 S.W.2d 80, 82 (Tex.App.—Fort Worth 1985, writ dism'd) (summary judgment proper when insured provoked his own death); *Ritchie v. John Hancock Mut. Life Ins. Co.*, 521 S.W.2d 367 (Tex.Civ.App.—Waco 1975, no writ) (summary judgment proper if person engaging in crime is shot while attempting to flee); *Spencer v. Southland Life Ins. Co.*, 340 S.W.2d 335 (Tex.Civ.App.—Fort Worth 1960, writ ref'd) (summary judgment proper when insured pointed unloaded shotgun at policeman; no one could assume policeman would risk death by waiting to investigate and analyze situation). Therefore, the Court is not persuaded the summary judgment as to the breach of the duty of good faith and fair dealing is erroneous.

■ Plaintiff also claims her causes of action under the Deceptive Trade Practices Act

and the Insurance Code have nothing to do with the denial of her bad faith claim. However, in order to establish statutory violations under the DTPA and the insurance code, the same elements necessary to establish the insurer's common law duty of good faith and fair dealing need to be proved. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988); *Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147 (Tex.App.—Dallas), *writ denied per curiam*, 802 S.W.2d 650 (1990). A statutory violation is dependent upon a "determination pursuant to law that the insurer breached the duty of good faith and fair dealing. Obviously, unless the breach of the duty of good faith and fair dealing is first established, the essential determination pursuant to law is absent." *Koral* at 148.

■ Mrs. Lockett contends Prudential violated article 21.21 § 16 of the Texas Insurance Code which gives policyholders a private cause of action if the insurance company misrepresents the terms of the policy of insurance. The basis for the violation is that "Prudential represented that in the event of an accidental death to Ms. Lockett's son, they would pay the sum of $10,000." Ms. Lockett contends death by gunshot is presumed to be accidental, and Prudential failed and refused to pay the claim without the benefit of talking to her or her son's girlfriend, Gwendolyn Johnson.

Prudential did not dispute it would owe on the policy if the death was accidental. However, Prudential has maintained throughout the case the death was not accidental. In its first letter denying Mrs. Lockett's claim, Prudential stated that according to the information provided by the Texas Rangers of Johnson County, the death of Ronald Coble was not the result of an accidental injury. According to Prudential, Mr. Coble was the aggressor in the altercation with the law enforcement officer and the act of aggression led to his death. Prudential maintained that Mr. Coble should have reasonably foreseen his death might result.

---

4. Some of the confusion with which Texas appellate courts have been struggling clearly results from the linguistic and mental gymnastics inherent in trying to prove a negative and the use of double negatives.

Prudential was asked to reconsider its position in a letter from plaintiff's counsel in June of 1990. In this letter, the plaintiff challenged the heavy reliance on the Texas Rangers' report and enclosed a copy of the girlfriend's statement. Following receipt of this letter, Prudential responded it was conducting an independent investigation of Mr. Coble's death for assistance in re-evaluating the claim. Approximately two months later, Prudential advised plaintiff's attorney their investigation was complete and Prudential was now reviewing all of the information obtained by its investigators. By letter dated October 16, 1990, Prudential advised the plaintiff its reconsideration was complete and again the claim was denied. Prudential relied on copies of voluntary statements from witnesses recounting the incident between the officer and Mr. Coble as well as the police report.[5] Prudential concluded, based on these reports and statements, Mr. Coble initiated the altercation which ended in his death. As the aggressor in the incident, Prudential believed Mr. Coble "should reasonably have foreseen that his altercation with Officer Reinhardt might result in his death."

Prudential again reconsidered the claim after receiving a letter from plaintiff's counsel dated April 9, 1991. In response, Prudential again denied the claim stating "[t]he general rule in this regard holds that where an insured engages in wrongful and aggressive conduct, is killed, and the death is a reasonably foreseeable and natural consequence of the insured's actions, then the death will not be deemed accidental and accidental death benefits under the policy will not be payable." Prudential also viewed the standard to be applied from the insured's viewpoint as not purely subjective but rather whether a reasonable person in the shoes of the insured would expect such a result. *Chen v. Metropolitan Ins. & Annuity Co.,* 907 F.2d 566 (5th Cir.1990); *Sanders v. Pru-*

*dential Ins. Co.,* 697 S.W.2d 80 (Tex.App.—Fort Worth 1985, writ dism'd). Based on the foregoing, it is clear the denial was based on Prudential's conclusion the death was not accidental, not that Prudential had represented to Ms. Lockett the policy covered accidental death when in fact it did not. Therefore, no evidence was presented indicating Prudential misrepresented the policy to Ms. Lockett.

▆ Plaintiff also maintains her cause of action for violations of article 21.21–2 of the insurance code should be reinstated. In particular, plaintiff alleges Prudential committed the following violations:

(1) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear; and

(2) Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

TEX.INS.CODE ANN. art. 21.21–2, § 2(b)(4), (5) (Vernon Supp.1994). Plaintiff argues none of these violations have anything to do with the common law cause of action for breach of the covenant of good faith and fair dealing. Although plaintiff makes the argument, she has not provided any authority supporting her assertion.

An unfair claim settlement practice is not committed simply because a claim is denied by an insurer. *Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179, 182 (Tex.App.—Texarkana 1993, writ denied). As previously discussed, in order to prove the insurance company has breached its duty of good faith and fair dealing, plaintiff must prove the absence of a reasonable basis for denying or delaying payment of the policy benefits. Likewise, no provision of article 21.21–2 is violated as long

5. Ms. Lockett contends Prudential should have interviewed her and her son's girlfriend, Gwendolyn Johnson, before denying her claim. Prudential could have assumed because Ms. Lockett was not at the scene and because Ms. Johnson stated in her police report she "heard them bumping the back of the car, and I knew they must be fighting but I didn't look back," they

would not be able to add anything to the Texas Rangers' report and the statements from the uninterested witnesses. *See St. Paul Guardian Ins. Co. v. Luker* 801 S.W.2d 614 (Tex.App.—Texarkana 1990, no writ) (insurer failed to interview wife concerning arson—investigators could have assumed that as interested party her statement would support husband's statement).

as a reasonable basis for the denial exists. *Id.* Under the facts of this case and existing case law, liability did not become reasonably clear until the jury determined Mr. Coble's death was accidental. Accordingly, plaintiff's motion to reinstate noncontractual claims is DENIED.

## V. ATTORNEY'S FEES

Plaintiff has filed her motion for award of reasonable costs and attorney's fees. In her motion, a request was made for the award of $7,000 for services through the trial of this cause, an additional $3,500 in the event an appeal is taken to the United States Court of Appeals for the Fifth Circuit, and an additional $2,500 in the event a Petition for Writ of Certiorari is requested by either party. In the defendant's response, Prudential argues the motion for attorney's fees should be denied because plaintiff's motion is not in compliance with local rule CV–7(j).

Ordinarily, this Court would deny plaintiff's motion because it does not comply with local rule CV–7(j). However, because plaintiff's counsel agreed to limit the request for attorney's fees during the pretrial conference and because defendant agrees the fees are reasonable, the Court will grant plaintiff's motion as follows: plaintiff is awarded $7,000 for services rendered through trial in the district court, $3,500 in the event an appeal is successfully presented on behalf of the plaintiff in the United States Court of Appeals for the Fifth Circuit, and an additional $2,500 in the event a petition for writ of certiorari is successfully presented on behalf of the plaintiff before the United States Supreme Court. Any future motions for attorney's fees must comply with local rule CV–7(j) or they will be denied.

Accordingly, it is hereby ORDERED the Plaintiff, Fannie Lockett, recover judgment from the Defendant, Prudential Insurance Company of America, in the amount of $10,-000, prejudgment interest at the rate of six percent (6%) per annum, statutory penalty of twelve percent (12%) on the amount of loss, postjudgment interest at the rate of ten per-cent (10%) per annum, and reasonable attorney's fees as set forth above.

ORDERED.