Lawrence D. TUCKER

v.

**STATE FARM FIRE AND CASUALTY COMPANY.**

No. CIV.A. G–97–253.

United States District Court, S.D. Texas, Galveston Division.

Oct. 22, 1997.

---

Terrance James Leonard, II, Houston, TX, for Plaintiff.

Warren Royal Taylor, Taylor & Taylor, Houston, TX, for Defendant.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

This suit arises out of an insurance dispute between Plaintiff Lawrence Tucker and Defendant State Farm Fire and Casualty Company. After Plaintiff's rental property burned, he filed an insurance claim with his insurer State Farm, but it was denied. Plaintiff then brought this action against State Farm, alleging breach of contract, breach of the common-law duty of good faith and fair dealing, violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.41 *et seq.* ("DTPA"), and violation of Article 21.21 of the Texas Insurance Code, TEX. INS. CODE art. 21.21 *et seq.* Now before the Court is Defendant's Motion for Partial Summary Judgment. For the reasons set forth below, Defendant's Motion for Partial Summary Judgment is **GRANTED.** Plaintiff's claims alleging breach of the common-law duty of good faith,

violation of the Texas Insurance Code, and violation of the DTPA are **DISMISSED WITH PREJUDICE.**

## I. FACTUAL SUMMARY

On October 17, 1994, a fire destroyed Plaintiff's rental property located in Bayview, Texas. After the fire was extinguished, it was investigated by the Texas State Fire Marshal's Office, who concluded that it was intentionally set. No charges were ever filed in connection with the fire. Following the Fire Marshal's investigation, State Farm, who insured the property, began its own independent investigation, retaining investigator Johnny Thornton to determine the cause and origin of the fire. During his investigation, it is alleged that Thornton noted extensive areas of heavy burns throughout the house with no natural causes. Thornton also found what he believed were suspicious burn patterns in several areas of the house indicative of incendiary origin. As part of his investigation, Thornton took debris samples from the burned house to a independent forensic chemist, who determined through chemical analysis that several of the samples contained a medium refined petroleum distillate, found in any commercially available charcoal starter. Following his investigation, Thornton concluded that the fire was intentionally set. He reported his findings to State Farm.

During their own investigation of Plaintiff's insurance claim, State Farm considered other facts, in addition to the investigator's report, that they allegedly used as a basis for denial. For instance, at the time of the fire, Plaintiff was in what State Farm believed to be an extremely poor financial position; thus, State Farm believed that Plaintiff had a financial motive for starting the fire. State Farm also contends that although he initially told State Farm that his income was $4,167 per month, Plaintiff later stated in deposition that he actually earned less than $30,000 in 1993 and 1994. Moreover, State Farm asserts that Plaintiff had recently received a judgment against him for $17,400 and was soon to be divorced. By State Farm's calculations, Plaintiff's monthly expenses exceeded $2,375, not including his Austin apartment bills, other credit cards, and support of his son. State Farm believed that these expenses were more than Plaintiff could afford, in light of his earnings. State Farm also considered Plaintiff's whereabouts at the time of the fire. The fire was reported at 4:38 a.m.; Plaintiff established that he was in Austin, a three hour drive away, at 7:41 a.m. State Farm alleges that because Plaintiff cannot prove his whereabouts prior to 7:41 a.m., he could have been in Bayview prior to that time and could have started the fire. Additionally, Plaintiff had what State Farm believed to be an extensive claim history, including a "suspicious" prior fire at rental property owned by Plaintiff on the same street, which burned under circumstances similar to the fire in question. Plaintiff has never been charged with any crime in connection with the fire giving rise to this lawsuit. It is undisputed that State Farm considered all of the above-mentioned facts when they denied Plaintiff's insurance claim.

In addition to bringing this suit to enforce State Farm's duty to pay on the insurance contract, Plaintiff also alleges extra-contractual claims. Plaintiff asserts that State Farm purposely delayed the resolution of his claim, taking over 16 months to deny the claim when liability under the contract was reasonably clear within only a few months. Plaintiff alleges that this delay, the way in which the investigation was conducted, and State Farm's predisposition towards the merit of the claim violates the Texas Insurance Code, the common-law duty of good faith, and the DTPA. Defendant moves for summary judgment on these extra-contractual claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that par-

ty. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED. R. CIV. P. 56(e)).

### III. APPLICABLE TEXAS LAW

In addition to the claim based upon his insurance contract with State Farm, Plaintiff has alleged a breach of the common-law duty of good faith and fair dealing, violation of the DTPA, and violation of the Texas Insurance Code. Texas state law controls the substance of Plaintiff's claims. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

### 1. Common-law Duty of Good Faith and Fair Dealing

Traditionally, a Plaintiff pursuing a "bad-faith" claim in Texas had to prove the following to prevail: 1) the absence of a reasonable basis for denying or delaying payment of the benefits of the insurance policy; and 2) that the insurance carrier knew or should have known that there was no reasonable basis for denying or delaying payment of the claim. *See, e.g., Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995); *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988) .[1] The Texas Supreme Court recently clarified this standard, stating that an insurer may be liable for bad faith by "failing to attempt in good faith to effectuate

---

**1.** The Texas Supreme Court has spoken at length on this issue:

The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay

payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct.

*Aranda,* 748 S.W.2d at 213.

a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 49, 55 (Tex.1997) (adopting language found in Article 21.21 § 4(10)(a)(ii) of the Texas Insurance Code).[2]

▮▮▮ It is clear in Texas that an insurer's liability under an insurance contract is separate and distinct from its liability for the tort of bad faith. *See Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993). Indeed, erroneously denying a claim is not bad faith in and of itself; after *Giles,* the key inquiry is the reasonableness of the insurer's conduct after liability has become reasonably clear. *See Giles,* 950 S.W.2d at 49; *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994) (noting that insurance carriers maintain the right to deny invalid or questionable claims without being held liable for an erroneous denial); *Lyons,* 866 S.W.2d at 600. Moreover, a bad-faith action requires much more demanding proof than the simple contractual suit on the insurance policy. *See State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279, 283 (Tex.App.—San Antonio 1993, no writ). When an insurer possess evidence reasonably showing that the insured's claim may be invalid, a bad-faith action is not viable. *See Aranda,* 748 S.W.2d at 213; *St. Paul Lloyd's Ins. Co. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

2. *Article 21.21 and DTPA Causes of Action*

▮▮▮ According to the teachings of *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex.1988), and its progeny, breach of the common-law duty of good faith and fair dealing by a carrier also gives rise to violations of the DTPA and the Texas Insurance Code. Conversely, if there is no merit to the bad-faith action in *this case,* there can be no liability under either of these statutes. *See, e.g., Beaumont Rice Mill, Inc. v. Mid-*

*American Indemnity Ins. Co.,* 948 F.2d 950, 952 (5th Cir.1991); *Giles,* 950 S.W.2d at 49 (noting that the new standard adopted in bad-faith actions unifies the common-law and statutory standards); *Saunders v. Commonwealth Lloyd's Ins. Co.,* 928 S.W.2d 322, 324 (Tex.App.—San Antonio 1996, no writ) ("Under Texas law, an insurer who can prove that it possessed a reasonable basis for denying or delaying payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, enjoys immunity from statutory bad faith under the Texas Deceptive Trade Practices Act and the Texas Insurance Code."); *Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179, 182 (Tex.App.—Texarkana 1993, writ denied) ("An insurer does not commit an unfair claim settlement practice merely because it denies a claim made by an insured. As long as there exists a reasonable basis for the insurer to deny the insured's claim, the insurer does not violate any provision of Article 21.21–2."); *Charter Roofing v. Tri–State Ins. Co.,* 841 S.W.2d 903, 906–07 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Walker v. Federal Kemper Life Assurance Co.,* 828 S.W.2d 442, 454 (Tex.App.—San Antonio 1992, writ denied); *Progressive County Mut. Ins. Co. v. Boman,* 780 S.W.2d 436, 440–41 (Tex.App.—Texarkana 1989, no writ).

Therefore, in this case, Plaintiff's extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability.

## IV. ANALYSIS

▮▮▮ At the outset, the Court notes that the key inquiry in this case is not whether Plaintiff set fire to his property; that question is clearly within the province of the jury. Instead, the proper inquiry is whether State Farm acted reasonably once their liability, or absence thereof, became reasonably clear. *See Giles,* 950 S.W.2d at 49. The Court finds the summary judgment evidence overwhelm-

---

**2.** The Court in Giles made clear that whether a claim is "reasonably clear" is a fact issue. *See Giles,* 950 S.W.2d at 56. ("[W]e reject the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury."). However, when the facts overwhelm, factual issues may be decided by the Court as a matter of law. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2510.

ing in favor of the Defendant on this issue.[3] After the fire, the State Fire Marshal's Office and an investigator, both independent fire experts, determined that the fire was intentionally set. Moreover, an independent forensic chemist determined that a substance similar to charcoal starter was present in several samples taken from the burned property. In Texas, reliance on the opinion of an independent expert is a reasonable basis for denial of a claim as a matter of law. *See Lyons*, 866 S.W.2d at 601; *Fong Chun Huang*, 808 S.W.2d at 526 (declaring that when an insurer possesses evidence reasonably showing that the insured's claim may be invalid, a bad-faith action is not viable). Here, State Farm relied upon two independent experts. Although these experts did not declare that Plaintiff himself started the fire, they did say that the fire was started intentionally. Certainly, this was sufficient to warrant a closer look by State Farm.

Additionally, during their investigation, State Farm learned facts leading them to believe that Plaintiff was in a poor financial condition. State Farm also learned that Plaintiff had what they believed to be an extensive claims history, including what they considered to be a "suspicious" claim based upon facts very similar to those at issue here. They also believed, given his account of his whereabouts on that night, that Plaintiff had the opportunity to set the fire.

■ The evidence submitted by the parties in this case, viewed in a light most favorable to the Plaintiff, establishes as a matter of law that State Farm did not act in bad faith when denying Plaintiff's claim. Under the standard adopted in *Giles*, an insurer can only be liable for bad faith if the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Giles*, 950 S.W.2d at 55 (citing *Aranda*, 748 S.W.2d at 213). Thus, the bad-faith inquiry begins by determining whether liability became reasonably clear and ends by focusing upon the insurer's actions thereafter. The Court notes that the *Giles* standard is a stringent one, indeed. Given the facts alleged in this case, which were before State Farm when it denied Plaintiff's claim, the Court concludes that liability in this case has *not yet* become reasonably clear.[4] It is apparent that State Farm had a reasonable factual basis for denying Plaintiff's claim. Whether that basis is erroneous is a factual issue for the trier of fact; however, the bad-faith issue is not. Thus, without commenting upon the strength of Plaintiff's remaining contractual action, the Court finds that no reasonable jury could conclude that State Farm was unreasonable in denying Plaintiff's claim, that State Farm did not have a reasonable basis for denying Plaintiff's claim, or that State Farm committed actions sufficient to constitute bad faith. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (declaring that summary judgment is proper when a reasonable jury could only reach one conclusion).[5] Therefore, under *Giles*, Plaintiff's extra-contractual claims must fail.

Thus, Defendant's Motion for Partial Summary Judgment is **GRANTED**, and Plaintiff's claims alleging violation of the DTPA, breach of the common-law duty of good faith and fair dealing, and violation of the Texas Insurance Code are **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also

---

**3.** Indeed, Plaintiff does not dispute that State Farm considered the following facts.

**4.** After *Giles*, the bad-faith inquiry focuses upon the insurer's actions after liability is reasonably clear. The Court finds today that, given the facts considered by State Farm, liability in Plaintiff's case was not reasonably clear as a matter of law. The Court assumes that Plaintiff is not basing his bad faith action on the "flip-side" of the *Giles* standard. In other words, the Court assumes that Plaintiff is not arguing that it was reasonably clear that Plaintiff's insurance claim had no merit; therefore, State Farm acted unreasonably by not denying it in a more reasonable way. Any

such argument, if pursued by Plaintiff, lacks merit.

**5.** Plaintiff essentially proffers only two factual bases for his claim of bad faith. First, Plaintiff alleges that State Farm waited 16 months to deny the claim. Second, Plaintiff asserts that State Farm "pre-judged" their claim before actually investigating it. Whether State Farm's denial is erroneous is clearly a fact issue for the trier of fact in this case. However, the factual bases offered by Plaintiff as proof of bad faith are insufficient to meet the rigid requirements of bad faith in Texas.

ORDERED to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**