**Robert and Sally DOUGLAS, Plaintiffs,**

v.

**STATE FARM LLOYDS, Defendant.**

No. CIV.A. H–97–3985.

United States District Court,
S.D. Texas.

Feb. 22, 1999.

---

**534**

George H Lugrin, IV, Griggs & Harrison, Houston; TX, for Robert Douglas, Sally Douglas, plaintiffs.

Christopher W. Martin, Bracewell and Patterson, Houston, TX, for State Farm Lloyds, defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant State Farm Lloyds's ("State Farm") Motion for Partial Summary Judgment (# 17). Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that State Farm's motion should be granted.

### I. *Background*

On May 10, 1996, Plaintiffs Robert and Sally Douglas ("the Douglases") reported cracking and settling damage to the interior of their home and foundation, which they believed to be caused by plumbing leaks. State Farm hired a licensed professional engineering company, S.E.A., Inc. ("S.E.A."), and a plumbing company, Plumbing Testing Services ("P.T.S."), to assist in the investigation of the claim. At the same time, State Farm sent a reservation of rights letter informing the Douglases that the damages they were claiming might not be covered under the terms of their Texas Standard Homeowners' Policy.

On July 24, 1996, S.E.A. issued its initial engineering report on the Douglases' residence. The report concluded that the reported damage to the interior of the residence was not caused by plumbing leaks. Rather, S.E.A. determined the interior damage was similar to the damage reported in the Douglases' pre-purchase inspection performed six years earlier and was aggravated by twenty-seven exterior foundation piers previously installed in the home in 1987. State Farm denied coverage of the Douglases' claim on July 31, 1996. Approximately four months later, however, State Farm received an engineering report dated December 17, 1996, from Harris Engineering Real Estate Inspections, Inc. ("Harris"). Harris had inspected the Douglases' home and opined that "major" plumbing leaks had caused damage to the interior of the home.

State Farm forwarded the Harris report to S.E.A. and asked if the report would change S.E.A.'s opinion regarding the cause of damage to the Douglases' residence. S.E.A. recommended that P.T.S. perform a flow test on the Douglases' plumbing system to determine if a major leak actually existed. Following the flow tests, S.E.A. provided their second engineering report on February 24, 1997. Based on P.T.S.'s findings that the plumbing did not leak under normal service conditions, S.E.A.'s second report opined that, "it is still the opinion of S.E.A., Inc. that the subject movement of the interior foundation of the Douglas residence is not related to a reported leak in the drain pipe servicing the washing machine and guest bathroom." Following receipt of S.E.A.'s report and an additional investigation by State Farm, another denial letter was mailed to the Douglases on June 5, 1997.

On November 5, 1997, the Douglases filed their original petition in Harris County Court at Law No. 1, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and violations

of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA"). The Douglases maintain that after their house suffered structural and cosmetic damages as a result of foundation movement caused by a plumbing leak, State Farm wrongfully withheld payment of insurance benefits. On December 5, 1997, State Farm removed the case to federal court on the basis of diversity of citizenship, asserting that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. In the instant motion, State Farm seeks dismissal of the Douglases' extra-contractual claims alleging breach of the duty of good faith and fair dealing and violation of the Texas Insurance Code and the DTPA.

## II. *Analysis*

### A. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v.*

*Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Marshall*, 134 F.3d at 321–22; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir. 1993)); *see Marshall*, 134 F.3d at 321; *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997), *cert. denied*, —— U.S. ——, ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *see Marshall*, 134 F.3d at 321.

Nevertheless, the nonmovants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Hart*, 127 F.3d at 435; *Wallace*, 80 F.3d at 1047; *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d

127 (1994)). Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

### B. *Duty of Good Faith and Fair Dealing*

The Douglases allege that State Farm's denial of their claim amounted to a breach of the duty of good faith and fair dealing. State Farm maintains, however, that the Douglases are not entitled to recover on their bad faith claim because a *bona fide* dispute existed regarding State Farm's liability for foundation damage under the Douglases' homeowner's policy.

■ "Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir.1997) (citing *Arnold v. Nat'l County Mut. Fire Ins. Co.* 725 S.W.2d 165, 167 (Tex.1987)); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex.1995); *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham*, 103 F.3d at 459 (citing *Arnold*, 725 S.W.2d at 167); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–51 (Tex.1997) (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994)); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex.1994). "In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Higginbotham*, 103 F.3d at 459 (citing *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex. 1988)). In determining whether a reasonable basis existed for denying a claim, the facts available to the insurer at the time of denial are considered. *See Viles*, 788 S.W.2d at 567.

■ An insurer's liability under an insurance contract is separate and distinct from its liability for breach of the duty of good faith and fair dealing. *See Lyons v. Millers Cas. Ins. Co. of Texas*, 866 S.W.2d 597, 600 (Tex.1993); *Viles*, 788 S.W.2d at 567. The key inquiry in a bad faith claim is the reasonableness of the insurer's conduct. *See Giles*, 950 S.W.2d at 49; *Moriel*, 879 S.W.2d at 17–18; *Lyons*, 866 S.W.2d at 601. "A *bona fide* controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459; *see Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193 (Tex.1998). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham*, 103 F.3d at 459 (citing *Lyons*, 866 S.W.2d at 600); *see Castaneda*, 988 S.W.2d at 193.

Until recently, in order to establish that an insurer breached its duty of good faith and fair dealing under Texas law, the plaintiff had to show both "(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Stoker*, 903 S.W.2d at 340; *accord Moriel*, 879 S.W.2d at 17; *Aranda*, 748 S.W.2d at 213. Fur-

ther, a cause of action for breach of the duty of good faith and fair dealing was stated when it was alleged that there was no reasonable basis for denial or delay in payment of a claim or failure on the part of the insurer to determine whether there was any reasonable basis for the denial or delay. *See Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 262 (5th Cir. 1995); *Plattenburg v. Allstate Ins. Co.,* 918 F.2d 562, 563 (5th Cir.1990); *Arnold,* 725 S.W.2d at 167. In 1997, the Texas Supreme Court clarified the standard, stating that "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Giles,* 950 S.W.2d at 55; *see Castaneda,* 988 S.W.2d at 193; *United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997); *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex.1997); *Pena v. State Farm Lloyds,* 980 S.W.2d 949, 955 (Tex.App.—Corpus Christi 1998, n.w.h.).

■ Under the "reasonably clear" standard, "an insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998); *see Williams,* 955 S.W.2d at 268; *Nicolau,* 951 S.W.2d at 448. The Texas Supreme Court explained that "[t]he 'reasonably clear' standard recasts the liability standard in positive terms, rather than the current negative formulation." *Giles,* 950 S.W.2d at 56. An insurer does not breach its duty, however, merely by erroneously denying a claim. *See Williams,* 955 S.W.2d at 268; *Moriel,* 879 S.W.2d at 17; *Tucker v. State Farm Fire & Cas. Co.,* 981 F.Supp. 461, 465 (S.D.Tex. 1997). Evidence that shows only a *bona fide* coverage dispute does not rise to the level of bad faith. *See Robinson v. State Farm Fire & Cas. Co.,* 13 F.3d 160, 162 (5th Cir.1994); *Simmons,* 963 S.W.2d at 43; *Williams,* 955 S.W.2d at 268; *Nicolau,* 951 S.W.2d at 448; *Moriel,* 879 S.W.2d at

17; *National Union Fire Ins. Co. v. Dominguez,* 873 S.W.2d 373, 376–77 (Tex.1994).

### 1. *Bona Fide Dispute—Coverage Under Homeowner's Policy*

State Farm contends that a *bona fide* dispute existed between itself and the Douglases concerning the interpretation of the homeowner's policy language. To bolster its argument, State Farm points to a period of appellate court debate regarding whether the standard homeowner's policy covered damage to a dwelling caused by the movement of its foundation due to an underground plumbing leak. The controversy began in June 30, 1997, with the Fifth Circuit's opinion in *Sharp v. State Farm Fire & Cas. Ins. Co.,* 115 F.3d 1258, 1264 (5th Cir.1997) (finding the damage not covered), and ended on July 3, 1998, with the Texas Supreme Court's opinion in *Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 742 (Tex.1998) (finding the damage covered). The policy provisions at issue in *Sharp* and *Balandran* are identical to those currently before the court.

In the case at bar, State Farm issued a Texas Standard Homeowner's Policy Form B, No. 53–K6–6585–1 ("the policy"), to the Douglases for the period July 17, 1995, through July 17, 1996. The policy provided two distinct coverages: (1) Coverage A, providing insurance for damage to the dwelling, and (2) Coverage B, providing insurance for damage to personal property. The insuring agreement for Coverage A provides:

> We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions.

The various exclusions enumerated in the General Exclusions section of the Policy limit coverage provided under Coverage A, including exclusion (h), which states:

> (h) We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors,

ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

Coverage B, by contrast, covers personal property losses caused by certain enumerated "perils," unless those losses are specifically excluded in the Exclusions section. The list of covered perils under Coverage B specifically includes plumbing leaks. Peril number nine of Coverage B covers "Accidental Discharge, Leakage, or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance."

On June 30, 1997, the Fifth Circuit in *Sharp* reviewed the same policy language as that contained in the Douglases' policy. *See* 115 F.3d at 1261. The court found no coverage of the plaintiff's claim for foundation damage. *See id.* at 1264. According to the Fifth Circuit, Exclusion (h) unambiguously excludes coverage for all damage to an insured's foundation regardless of cause of damage. *See id.* In *Sharp*, as in this case, the plaintiffs argued plumbing leaks had caused their foundation to shift and the resulting damage was a covered loss under their homeowner's policy. *See id.* at 1260. In support of their claim, the *Sharp* plaintiffs contended that the accidental discharge provision in the personal property coverage section of the policy rendered the foundation exclusion ambiguous. *See id.* at 1262. The Fifth Circuit disagreed:

> [W]e cannot agree that text specifically included in Coverage B, which applies only to personal property, may be imported into Coverage A, which applies to the dwelling or house, in order to create coverage for a loss that does not involve personal property damage. The Sharps' policy clearly and unambiguously divides dwelling losses and personal property losses into two separate 'coverages.' It therefore would appear to be nonsensical, and a rejection of the obvious structure of the policy, to reach into text that applies solely to Coverage B (Personal Property) to determine the extent of

coverage provided under Coverage A (Dwelling).

*Id.* Thus, the court held that "the policy that State Farm issued to the Sharps unambiguously excludes coverage for damage to their home that results from a foundation shift caused by a sub-surface plumbing leak." *Id.* at 1264.

On July 9, 1997, however, the Supreme Court of Texas issued its opinion in *Nicolau*, where the court affirmed recovery by a homeowner for damages to the dwelling foundation caused by a plumbing leak. *See* 951 S.W.2d at 453. The homeowner's policy in *Nicolau* was a version of the Texas Standard Homeowners Policy which was in use immediately prior to the 1991 version involved in *Sharp*. *See Balandran v. Safeco Ins. Co.*, 129 F.3d 747, 748 (5th Cir.1997). The policy in *Nicolau* contained an exclusion for losses caused by "settling, cracking, bulging, shrinkage, or expansion of foundation," but also contained an express exception stating that these exclusions do not apply "to losses caused by an accidental discharge, leakage or overflow of water from within a plumbing system." 951 S.W.2d at 446. There was no dispute, however, in *Nicolau* as to coverage.

On August 22, 1997, the Commissioner of Insurance for the State of Texas issued a bulletin to all property and casualty insurers explicitly stating that the Department of Insurance did not agree with the decision of the Fifth Circuit in *Sharp*. The bulletin expressed the Commissioner's opinion that the Texas Standard Homeowner's Policy covers structural and cosmetic damage to a dwelling that results from a foundation shift caused by a plumbing leak beneath the house:

> The United States Fifth Circuit Court of Appeals recently issued the *Sharp* opinion [*Sharp*, 115 F.3d at 1258] in which the court held that the Texas Standard Homeowner's Policy Form HO–B does not cover structural and cosmetic damage to a dwelling that results from a foundation shift which itself was caused

by a plumbing leak beneath the house. Since the issuance of this opinion, the Department has received numerous inquiries from customers, attorneys, and insurers on the Department's position on this matter. The Department does not agree with the *Sharp* holding. The purpose of this bulletin is to state the Department's position that there is coverage under Coverage A (Dwelling) in the HO–B policy form for such damage and to explain the reasons for this position.

\* \* \* \* \* \*

Because decisions of federal circuit courts of appeals and federal district courts with respect to issues of state law are not binding on Texas state courts, the Department expects insurers to pay claims in accordance with the Department's position as stated in this bulletin, and the Department will monitor insurers for compliance. The Department recognizes that there may be legitimate disputes about the cause of a loss, and this bulletin is not intended to address these disputes or render such disputes invalid.

An insurer's refusal to pay claims under the Texas Standard Homeowners Policy Form HO–B for damage to the insured dwelling, including damage to the foundation caused by settling, cracking, bulging, shrinkage, or expansion, caused by the peril of accidental discharge, leakage, or overflow of water from within a plumbing, heating, or air conditioning system or household appliance may subject the insurer to disciplinary action for violations of the Texas Insurance Code, including unfair claim settlement practices pursuant to Article 21.21 § 4(10)(a) and Article 21.21–2. Under both statutory and common law, insurers have a duty to deal fairly and in good faith with their insureds. The Texas Supreme Court recently unified the common law and statutory standard for bad faith. *Adopting the statutory bad-faith standard in Article 21.21 § 4(10)(a)(ii) of the Texas Insurance Code, the court*

*held that an insurer breaches its duty of good faith and fair dealing when the insurer fails to settle a claim if the insurer knew or should have known that it was reasonably clear that the claim was covered. [Giles, 40 Tex. Sup.Ct. J. at 815, 950 S.W.2d 48].*

Tex. Dep't Of Ins. Bulletin B–0032–97 (Aug. 22, 1997) (emphasis in original).

On November 18, 1997, the Fifth Circuit in *Balandran* was again confronted with the issue of deciding whether the Texas standard homeowner's policy covered damage to a dwelling that resulted from a foundation shift caused by a subsurface plumbing leak, just five months after its decision in *Sharp* finding no coverage for that type of damage. *See Balandran*, 129 F.3d at 748. Alluding to the conflict over policy coverage, the Fifth Circuit certified the coverage question to the Supreme Court of Texas, stating:

Given these developments after our Circuit's decision in *Sharp* and recognizing the obligation of our federal court in a diversity case to apply state law when construing the insurance contract involved in this case, we believe that insureds and insurers in Texas will be best served by certifying the policy coverage question in this case to the Supreme Court of Texas for a final and definitive resolution.

*Id.* at 749. The court certified the following question: "Whether the exclusion in Subsection (h) of the 1991 Texas Standard Homeowner Policy—Form B excludes from coverage damage to a dwelling caused by a movement of its foundation that was caused by an underground plumbing leak?" *Id.* On July 3, 1998, the Texas Supreme Court responded "No" to the Fifth Circuit's question, concluding that the standard homeowner's policy covers damage to a dwelling caused by a movement of its foundation that was caused by an underground plumbing leak. *See Balandran*, 972 S.W.2d at 742.

State Farm contends that the *bona fide* dispute between itself and the Douglases mirrors the appellate courts' confusion concerning the scope of coverage of the homeowner's policy. The Douglases disagree, arguing that State Farm's conduct constituted a breach of the duty of good faith and fair dealing because State Farm denied their claim despite the Texas Insurance Commissioner's directive and the Texas Supreme Court's decision in *Balandran*. In essence, the Douglases argue that a *bona fide* dispute did not exist at the time State Farm denied their claim because the Texas Insurance Commissioner expressed a contrary view and the Texas Supreme Court ultimately found State Farm's interpretation of the Douglases' homeowners' policy to be incorrect. This argument, however, is misplaced.

In *Balandran*, the Supreme Court of Texas, when deciding the coverage issue, observed:

> [W]e conclude that the exclusion repeal provision is subject to two reasonable interpretations, and is therefore ambiguous. We are mindful of the Fifth Circuit's reasoning in *Sharp*, and we agree that it reflects one reasonable interpretation of the policy language. However, the Balandrans' interpretation is also reasonable. First, the policy on its face states that exclusion 1(h) does not apply to 'loss' caused by a plumbing leak; this repeal of exclusion 1(h) is not expressly limited to 'personal property loss.' That the exclusion repeal provision is contained in Coverage B does not necessarily dictate Safeco's narrow reading. Instead, the exclusion repeal provision could be located under Coverage B simply because that is the only place in the policy that the 'accidental discharge' risk is specifically described. Because the exclusion repeal provision applies solely to that risk, it is logical for it to be adjacent to the policy's description of the risk.
>
> In sum, we conclude that the Balandrans' interpretation of the exclusion re-peal provision is not unreasonable. Because the Balandrans are the insureds, we adopt their interpretation as the proper construction of the policy.

*Id.* at 741–42. The court, therefore, explicitly recognized the reasonableness of State Farm's position based upon the Fifth Circuit's earlier decision addressing precisely the same coverage issue in *Sharp*.

▮ The Texas Supreme Court has repeatedly held that bad faith does not arise simply because the insurer's construction of the policy was subsequently found to be legally incorrect. *See Williams*, 955 S.W.2d at 268 (citing *Giles*, 950 S.W.2d at 48); *Moriel*, 879 S.W.2d at 17. Rather, "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d at 55; *see Castaneda*, 988 S.W.2d at 193; *Williams*, 955 S.W.2d at 268; *Nicolau*, 951 S.W.2d at 448; *Pena*, 980 S.W.2d at 955. Evidence that shows only a *bona fide* coverage dispute does not rise to the level of bad faith. *See Robinson*, 13 F.3d at 162; *Simmons*, 963 S.W.2d at 43; *Williams*, 955 S.W.2d at 268; *Nicolau*, 951 S.W.2d at 448; *Moriel*, 879 S.W.2d at 17; *Dominguez*, 873 S.W.2d at 376–77.

▮ The Insurance Commissioner's bulletin does not change the situation. The bulletin, issued August 27, 1997, disagreed with the Fifth Circuit's opinion in *Sharp* and clarified the position of the Texas Department of Insurance regarding the scope of coverage of the Texas standard homeowner's policy. In *Sharp*, the Fifth Circuit rejected the plaintiffs' contention that it was bound by a statement by the Texas Department of Insurance that the " 'current policy language in these forms is ambiguous and unclear as to coverage for the tear out and replacement of building or land in the event of accidental discharge or leakage of water ....' " 115 F.3d at 1262 (quoting 20 Tex. Reg. 10398, 10399 (Dec. 8, 1995)). The court noted:

[A]lthough the Sharps repeatedly refer to this statement as contained in a "final order," the document in question does not constitute a binding adjudication by a state agency: it is simply a notice that the Department has adopted certain endorsements that it believes are clearer than the standardized policy.

Unless we first find that the policy is ambiguous, our duty is to hold the parties to the plain terms of the contract to which they have agreed, and that duty cannot be overridden by the possibility that the revision committee improperly eliminated coverage for this type of claim, nor by the Department's post-hoc suggestion that the "tear out and replace" provision of the "accidental discharge" peril to personal property is confusing.

*Id.* (footnote omitted). While it is likely that the August 27 bulletin was issued in response to the Fifth Circuit's comments, the bulletin is not law. "[T]he Commissioner's construction of the [law] is not binding on a reviewing court; it lies within the judicial power, not the executive power, to say with final authority what a statute means." *Amarillo Ind. Sch. Dist. v. Meno,* 854 S.W.2d 950, 955 n. 6 (Tex. App.—Austin 1993, writ denied). Although a reviewing court may accord certain degree of deference to the Commissioner's interpretation of a particular statute or provision, it remains only the Commissioner's view concerning the meaning of the law. *See id.* State Farm cannot be held liable for failing to follow a non-binding Commissioner's bulletin that a court could ultimately accept or reject. Had the bulletin been binding law, there would have been no need for the Fifth Circuit to certify the coverage question to the Texas Supreme Court in *Balandran,* as the bulletin would have been determinative of the coverage issue. Therefore, "[b]ecause the Fifth Circuit adopted State Farm's construction, and because the Texas Supreme Court deemed the construction asserted by State Farm reasonable, [this court] con-clude[s] as a matter of law that State Farm had a reasonable basis for denying the claim." *Oram v. State Farm Lloyds,* 977 S.W.2d 163, 167 (Tex.App.—Austin 1998, n.w.h.).

### 2. *Bona Fide Dispute—Cause of Damage*

As an alternative basis for denial of the Douglases' claim, State Farm contends that a *bona fide* dispute existed concerning whether a plumbing leak actually damaged the Douglases' foundation. The Douglases argue that no such dispute existed, asserting instead that State Farm failed reasonably to investigate their claim and/or engaged in an outcome-oriented investigation.

An insurer will not escape liability by failing to investigate a claim so that it can contend that liability was never reasonably clear. *See Giles,* 950 S.W.2d at 56 n. 5. Rather, the Supreme Court reaffirmed in *Giles* that "an insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Id.* (citing *Arnold,* 725 S.W.2d at 167). Thus, an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial. *See Simmons,* 963 S.W.2d at 43; *Nicolau,* 951 S.W.2d at 448; *Lyons,* 866 S.W.2d at 601. Moreover, an insurer's reliance upon an expert report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable. *See Nicolau,* 951 S.W.2d at 448.

An insurance company's obligation to investigate, however, is not unlimited. *See Simmons,* 963 S.W.2d 42, 43. "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *Id.* If, after a reasonable investigation, the insurer has evidence showing that the insured's claim may be invalid, a

bad faith action is not viable. *See Tucker,* 981 F.Supp. at 465 (citing *Aranda,* 748 S.W.2d at 213); *St. Paul Lloyd's Ins. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex.App.—Houston [14th Dist.] 1991, writ denied). To prevail, "[t]he insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham,* 103 F.3d at 459 (citing *State Farm Lloyds v. Polasek,* 847 S.W.2d 279, 284 (Tex.App.—San Antonio 1992, writ denied)). "[I]nsurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim." *Id.* (citing *Fong Chun Huang,* 808 S.W.2d at 526); *see Robinson,* 13 F.3d at 162; *Aranda,* 748 S.W.2d at 213.

▇▇ Here, in view of the nature of the incident and the value and complexity of the claim, State Farm's investigation was adequate, and its reliance on the findings of the investigation was reasonable. *See Simmons,* 963 S.W.2d at 43. On July 24, 1996, S.E.A. issued its initial engineering report on the Douglases' residence. The report expressed the opinion that the reported damage to the interior of the residence was not caused by plumbing leaks. Rather, S.E.A. noted that the interior damage was similar to the findings reported in the Douglases' prepurchase inspection performed six years earlier and was aggravated by twenty-seven exterior foundation piers previously installed in the home in 1987. Specifically, the report concluded:

> The damages as found were characteristic of those caused by various construction deficiencies, normal anticipated movement (expansion and contraction) of the building components, long-term water damage, inadequate maintenance, and differential foundation movement. Many of the problems examined during S.E.A.'s inspection generally reflected those conditions as outlined in Ronald I. Givens & Associates report dated June 12, 1990. Though, it is probable that,

with age, those conditions have continued to worsen or develop.

> It is also probable that the settlement of the interior slab has been aggravated or compounded by the installation of the [twenty-seven] perimeter piers reportedly installed by AAA Construction in May 1987. That is, the perimeter of the structure was probably raised and leveled at the time of the pier installation which subsequently has prevented the perimeter of the foundation slab from settling, while providing no additional support from the interior of the slab.

Based on the policy exclusions and State Farm's investigation, which included the S.E.A. report, State Farm denied coverage of the Douglases' claim on July 31, 1996. Approximately four months later, however, State Farm received an engineering report from Harris dated December 17, 1996. After inspecting the Douglases' home, Harris concluded that "major" plumbing leaks had caused damage to the interior of the dwelling.

Following receipt of the Harris report, State Farm forwarded it to S.E.A., inquiring whether the report altered S.E.A.'s opinion regarding the cause of damage to the Douglases' home. S.E.A. recommended that P.T.S. perform a flow test on the home's plumbing system to determine if a major leak actually existed. Following the flow tests, S.E.A. provided their second engineering report on February 24, 1997. Based on P.T.S.'s findings that the plumbing did not leak under normal service conditions, S.E.A.'s second report opined:

> The Harris engineering report indicated that 'the plumbing leakage that was detected by Plumbing Testing Services, Inc. was in the middle portion of the house. The signs of distress were most evident in the middle portion of the house.' S.E.A. made similar observations during our evaluation of this matter. However, the Ronald I. Givens & Associates report dated June 12, 1990 indicated similar observations with re-

spect to the central portion of the residence and foundation which, on the date of the Givens report 'the slab on grade foundation is found to have experienced differential movement of concern ....' In fact, the Givens report indicated that 'the floor slab unevenness is beyond acceptable tolerance for age, location, type of construction and taking into consideration the extent of foundation repairs.' It is S.E.A.'s opinion that the settlement of the central portion of the residence, foundation slab, and walls is a continuation of past problems which include differential foundation movement associated with improper soil compaction and/or volumetric changes associated with fluxations [sic] in the moisture content of the soil, and/or the reported foundation repairs (i.e., the leveling, raising, and piering the perimeter of the foundation slab and walls). In S.E.A.'s experience, it is not uncommon for residences to experience similar settlement or sagging of the center portion of the slab sometime after the perimeter walls have been piered (leveled, raised) due to the factors referenced above.

\* \* \* \* \* \*

Two-flow tests of the sanitary plumbing drain pipes in the vicinity of the 'leak' were conducted by PTS on January 2 and 24, 1997. These tests confirmed that the subject drain pipe does not leak under normal flow or usage.

\* \* \* \* \* \*

Based upon S.E.A.'s additional evaluation of the subject matter, it is still the opinion of S.E.A., Inc. that the subject movement of the interior foundation of the Douglas residence is not related to a reported leak in the drain pipe servicing the washing machine and guest bathroom.

Following receipt of S.E.A.'s report and an additional investigation by State Farm, another denial letter was mailed to the Douglases on June 5, 1997.

Thus, based on the facts that were before the insurer after a reasonable investigation, State Farm's liability was not reasonably clear when it denied the claim. Indeed, State Farm's liability has not yet become reasonably clear. In fact, at deposition, Robert Douglas ("Douglas") acknowledged the existence of a *bona fide* dispute between his expert and those retained by State Farm. In response to a question regarding whether Douglas, also an engineer, had any complaints about the engineers who inspected his residence on behalf of State Farm, he stated:

A: But as an engineer and working with them, I know that people and they come up with two opinions or assessments that are totally in direct opposite. And they're both— you know, as far as their credibility and all, they both are credible. It's just that they take the information and they go in different directions.

Q: So, you think between your engineer and the State Farm engineer that was retained, Mr. Potts, there is sort of a pretty good *bona fide* dispute between what they came up with?

A: Yea, I think there is.

In this situation, the plaintiffs have failed to adduce competent summary judgment evidence from which it could be inferred that State Farm acted in bad faith when denying their claim. At most, there is a *bona fide* coverage dispute between the parties. Therefore, summary judgment is warranted with respect to the plaintiffs' claims for breach of the duty of good faith and fair dealing.

C. *Statutory Claims*

The Douglases further allege that State Farm's denial of their claim amounted to a violations of the Texas Insurance Code and the DTPA.

█ In Texas, an individual who has been damaged by "unfair methods of competition or unfair or deceptive acts or prac-

tices in the business of insurance" may bring a statutory cause of action under the Texas Insurance Code against the "person or persons engaging in such acts or practices." TEX. INS. CODE ANN. art. 21.21, § 16; *see Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Tex., Inc.*, 164 F.3d 952, 955 n. 3 (5th Cir.1999); *Storebrand Ins. Co. U.K., Ltd. v. Employers Ins. of Wausau*, 139 F.3d 1052, 1055 (5th Cir. 1998); *Higginbotham*, 103 F.3d at 460; *Ayoub v. Baggett*, 820 F.Supp. 298, 299 (S.D.Tex.1993). A violation of the duty of good faith and fair dealing also constitutes an unfair insurance practice in violation of Article 21.21 of the Insurance Code. *See Tucker*, 981 F.Supp. at 465; *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691, 694 (S.D.Tex.1992); *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex.1988). In addition, "the use or employment by any person of an act or practice in violation of Article 21.21, Insurance Code" is a violation of the DTPA. TEX. BUS. & COM. CODE ANN. § 17.50(a); *see Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354 (5th Cir.1993); *Tucker*, 981 F.Supp. at 465; *Dixon*, 799 F.Supp. at 694; . *Vail*, 754 S.W.2d at 136.

■ "The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing common law requirements." *Robinson*, 13 F.3d at 162. Hence, the breach of an insurance contract does not automatically give rise to liability under the Insurance Code or the DTPA. *See Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex.App.— San Antonio 1992, writ denied) (citing *South Tex. Nat'l Bank v. U.S. Fire Ins. Co.*, 640 F.Supp. 278, 280 (S.D.Tex.1985)). Rather, the "reasonableness" requirements of common law good faith apply equally in the statutory context. *See Giles*, 950 S.W.2d at 55. "According to Texas law, extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action."

*Lawson v. Potomac Ins. Co.*, No. Civ. 3:98–CV–0692H, 1998 WL 641809, at *4 (N.D.Tex. Sept. 14, 1998) (citing *Higginbotham*, 103 F.3d at 460). Thus, in order to establish a statutory violation under the Insurance Code or the DTPA, the elements necessary to demonstrate an insurer's breach of the common law duty of good faith and fair dealing must be proven. *See Higginbotham*, 103 F.3d at 460; *Lawson*, 1998 WL 641809, at *4; *Lockett v. Prudential Ins. Co.*, 870 F.Supp. 735, 741 (W.D.Tex.1994) (citing *Vail*, 754 S.W.2d at 135; *Koral Indus., Inc. v. Security–Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147 (Tex.App.—Dallas), *writ denied per curiam*, 802 S.W.2d 650 (Tex.1990)). A statutory violation is dependent upon a " 'determination pursuant to law that the insurer breached the duty of good faith and fair dealing.' " *Id.* (quoting *Koral Indus., Inc.*, 788 S.W.2d at 148); *see Higginbotham*, 103 F.3d at 460; *Lawson*, 1998 WL 641809, at *4; *see also Charter Roofing Co. v. Tri–State Ins. Co.*, 841 S.W.2d 903, 906 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Thus, when an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims. *See Higginbotham*, 103 F.3d at 460; *Lawson*, 1998 WL 641809, at *4; *Beaumont Rice Mill, Inc. v. Mid–American Indem. Ins. Co.*, 948 F.2d 950, 952 (5th Cir.1991); *Tucker*, 981 F.Supp. at 465; *State Farm Fire & Cas. Co. v. Woods*, 925 F.Supp. 1174, 1180 (E.D.Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir.1997); *Lockett*, 870 F.Supp. at 741; *Standard Fire Ins. Co. v. Rominger*, 827 F.Supp. 1277, 1279 (S.D.Tex.1993); *Saunders v. Commonwealth Lloyd's Ins. Co.*, 928 S.W.2d 322, 324 (Tex.App.—San Antonio 1996, no writ); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex.App.—Tyler 1994, writ denied). As the court observed in *Tucker*:

Given the facts alleged in this case, which were before [the insurer] when it

denied Plaintiff's claim, the Court concludes that liability in this case has not yet become reasonably clear. It is apparent that [the insurer] had a reasonable factual basis for denying Plaintiff's claim. Whether that basis is erroneous is a factual issue for the trier of fact; however, the bad-faith issue is not. Thus, without commenting upon the strength of Plaintiff's remaining contractual action, the Court finds that no reasonable jury could conclude that [the insurer] was unreasonable in denying Plaintiff's claim, that [the insurer] did not have a reasonable basis for denying Plaintiff's claim, or that [the insurer] committed actions sufficient to constitute bad faith. Therefore, under *Giles*, Plaintiff's extra-contractual claims must fail.

981 F.Supp. at 466 (citations and footnotes omitted). Consequently, because the common law bad faith claims asserted by the Douglases in the instant case are without merit, summary judgment is also proper as to their statutory claims under the Texas Insurance Code and the DTPA.

III. *Conclusion*

Accordingly, State Farm's motion for partial summary judgment is GRANTED.

There exist no outstanding issues of material fact with regard to the plaintiffs' extra-contractual causes of action alleging breach of the duty of good faith and fair dealing as well as violations of the Texas Insurance Code and the DTPA. State Farm is entitled to judgment as a matter of law on these claims.

IT IS SO ORDERED.

## PARTIAL SUMMARY JUDGMENT

In accordance with the court's Memorandum and Order dated February 22, 1999, the claims of Plaintiffs Robert and Sally Douglas against State Farm Lloyds for breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.